**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2689-WJM

JOSSEPH STEEVEN QUIMI-ARELLANO,

     Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden of the Denver Contract Detention Facility, *et al*.

     Respondents.

---

## AMENDED ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Josseph Steeven Quimi-Arellano's Verified Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1) and Motion for Temporary Restraining Order and/or Preliminary Injunction ("Motion") (ECF No. 4). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); George Valdez, in his official capacity as Field Office Director of ICE's Denver Field Office; Markwayne Mullin, in his official capacity as Secretary of the Department of Homeland Security ("DHS"); David Venturella, in his official capacity as Acting Director of Immigration and Customs Enforcement ("ICE"); and Todd Blanche, in his official capacity as Acting Attorney General of the United States (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 8.) Quimi-Arellano filed a reply. (ECF No. 13.)[1]

---

[1] Quimi-Arellano notably filed a reply without first seeking leave of Court. (*See* ECF No. 9 (noting "the Court will determine whether it will require a Reply from the Petitioner" upon receipt of the Response)). Despite his procedural oversight, the Court will consider Quimi-Arellano's reply given he did not previously have an opportunity to address the Tenth Circuit's

For the following reasons, the Petition is granted, and the Motion is denied as moot.

## I.    BACKGROUND

This case presents an all-too-familiar fact pattern.  Quimi-Arellano is a noncitizen who has lived in the United States since 2024.  (ECF No. 1 at ¶ 39.)  ICE temporarily detained Quimi-Arellano upon his initial entry to the United States but then released him on his own recognizance pursuant to 8 U.S.C. § 1226(a).  (*Id.* at ¶ 4.)  After his release, Quimi-Arellano obtained gainful employment in the restaurant industry, working as a sushi chef as well as in food delivery.  (*Id.* at ¶ 39.)  In addition, he has no criminal history that would subject him to mandatory detention.  (*Id.*)

Despite the foregoing circumstances, ICE abruptly re-detained Quimi-Arellano in May 2026, without notice or an opportunity to be heard.  (*Id.* at ¶¶ 5, 39.)  Respondents now claim that he is subject to mandatory detention under 8 U.S.C. § 1225(b).  (*Id.* at ¶ 5; *see also* ECF No. 12 at 1.)  In the Petition, Quimi-Arellano challenges the legality of Respondents' invocation of § 1225(b).  (*Id.* at 1.)  Among other relief, he asks the Court to issue a writ of habeas corpus requiring Respondents to immediately release him from custody or, in the alternative, to schedule him for a custody hearing pursuant to 8 U.S.C. § 1226(a) before this Court within seven days.  (*Id.* at 22.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More

---

intervening precedent in *Santillan Quiroz v. Mullin,* --- F.4th ----, 2026 WL 1876709, at *1 (10th Cir. June 30, 2026).

2

specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Quimi-Arellano claims that his mandatory detention under § 1225(b) violates the Immigration and Nationality Act ("INA") (Count I), the INA's implementing regulations (Count II), the Administrative Procedures Act, 5 U.S.C. § 706(a) *et seq.* ("APA") (Counts III and VII), and his Fifth Amendment Due Process rights (Counts IV, V, and VI). (*See generally* ECF No. 1.) The Court need only reach Quimi-Arellano's claims that his re-detention violates the INA and his Fifth Amendment procedural due process rights to resolve the Petition.

### A.    Sections 1225(b) and 1226(a)

Quimi-Arellano first claims that Respondents' invocation of § 1225 "unlawfully mandates his contend detention without a custody determination hearing and violates 8 U.S.C. § 1226(a)." (ECF No. 1 at ¶ 50.) Respondents "maintain that [Quimi-Arellano's] detention [under § 1225(b)] is lawful" but have declined to submit "a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No.

12 at 1–2.)  In any case, the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin,* ---- F.4th ----, 2026 WL 1876709, at *1 (10th Cir. June 30, 2026) leaves little to debate. Quimi-Arellano is right.

In *Santillan Quiroz,* the Tenth Circuit considered "whether § 1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at *2, *4.  Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[2] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at *5.  The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at *6–*7.  It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at*7.  Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.*  By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*[3]

---

[2] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at *5 n.6.  But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Quimi-Arellano]." *Id.*

[3] Notably, this reasoning is consistent with the numerous other decisions the undersigned has reached in the very recent past.  *Cf. Garcia Lozano v. Mullin,* 2026 WL 1091266, at *2–*4 (D. Colo. Apr. 22, 2026); *Pal v. Lyons,* 2026 WL 937962, at *2–*4 (D. Colo. Apr. 7, 2026); *Saini v. Baltazar,* 2026 WL 1091263, at *2–*4 (D. Colo. Apr. 22, 2026); *Temaj Lopez v. Baltasar,* 2026 WL 628199, at *2–*4 (D. Colo. Mar. 6, 2026); *Singh v. Baltasar,* 2026 WL 601950, at *1 (D. Colo. Mar. 4, 2026); *Hernandez v. Baltazar,* 2026 WL 507518, at *4 (D. Colo. Feb. 24, 2026); *Fuentes Bonilla v. Baltazar,* 2026 WL 452365, at *4 (D. Colo. Feb. 18, 2026); *Martinez-Orellana v. Hagan,* Civil Action No. 26-cv-0355-WJM (D. Colo. Feb. 13, 2026) (ECF No. 14); *Alvarez Hernandez v. Baltazar,* 2026 WL 304362, at *1–4 (D. Colo. Feb. 5, 2026); *Garcia Abanil v. Baltazar,* 817 F. Supp. 3d 1148, 1155–57 (D. Colo. 2026); *Morales Lopez v. Baltazar,* 2026 WL 25161, at *4–5 (D. Colo. Jan. 5, 2026).

The material facts here are indistinguishable from those summarized in *Santillan Quiroz.* Like the § 2241 petitioner in that case, Quimi-Arellano had already entered the United States—notably, as a result of Respondents having released him on his own recognizance under § 1226(a) shortly after entry—when he was detained in May 2026. Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Quimi-Arellano.

## B.    Procedural Due Process

Quimi-Arellano also claims that "Respondents' revocation of [his] release on [his] own recognizance without providing notice and a meaningful opportunity to be heard violates procedural due process under the Fifth Amendment of the Constitution." (ECF No. 1 at 21.) The Government's cursory response makes no mention of Quimi-Arellano's due process claim. (*See generally* ECF No. 12.) But this Court has already held that the Government violates procedural due process when it re-detains noncitizens previously released on conditional parole under § 1226(a) without notice or a pre-deprivation hearing. *Singh v. Hagan,* Civil Action No. 26-cv-1109 (D. Colo. Apr. 1, 2026) (ECF No. 11).[4] In keeping with *Singh,* the Court again concludes that Respondents violated due process by committing those same procedure failures before re-detaining Quimi-Arellano.

---

[4] Other district courts in this Circuit have reasoned similarly. *See also Makhmudov v. Bondi,* 2026 WL 915597, at *12 (W.D. Okla. Apr. 3, 2026) (finding petitioner had shown a likelihood of success on the merits of his procedural due process claim that he was entitled to a pre-deprivation hearing before being re-detained); *Singh v. Noem,* --- F. Supp. 3d ---, 2026 WL 766228, at *5–*10 (D.N.M. Mar. 18, 2026) (concluding, after consideration of the *Mathews* factors, that conditionally paroled § 2241 petitioner's failure to receive a pre-deprivation hearing prior to being re-detained violated his procedural due process rights); *Diallo v. Orozco,* 2026 WL 608746, at *2 (D.N.M. Mar. 4, 2026) ("due process requires Diallo," who had previously been released on his own recognizance, "receive a hearing before an IJ prior to re-detention").

**C.    Remedy**

The Government submits that, "if the Court does grant the Petition, the appropriate relief would be an order directing a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge within a reasonable time."  (ECF No. 12 at 2.)  The Court disagrees for two reasons.

First, as recently put by one district judge in this Circuit,

> [a] bond hearing, which Petitioner is entitled to regardless, cannot cure the fact that he is detained while his conditional parole is still ongoing because it has not been properly terminated.  Petitioner's . . . release is required to remedy the ongoing due process violation caused by Petitioner being detained while his conditional parole has not yet been terminated.  The Court does not see how ordering another bond hearing would remedy a wrong that has been ongoing since the outset of Petitioner's re-detention.

*Singh,* 2026 WL 766228, at *10; *see also Vielma Uzcategui v. Brooksby, et al.,* 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (ordering immediate release of petitioner previously released on her own recognizance); *Velasquez Montillo v. Brooksby,* 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (same); *Murzi v. Noem,* 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (same).

Second, this Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore."  *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever").  Indeed, courts across the country have, with increasing

6

frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Quimi-Arellano's immediate release.

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 9) is MADE ABSOLUTE and Quimi-Arellano's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Quimi-Arellano pursuant to Counts I, II, and VI of the Petition.  The Court does not reach the merits of Counts III, IV, V, and VII;

3.    The Motion (ECF No. 4) is DENIED AS MOOT;

4.    **By no later than this Saturday, July 4, 2026,** Respondents shall IMMEDIATELY RELEASE Quimi-Arellano on his own recognizance, along with all his personal belongings, subject only to the conditions of his pre-existing conditional parole**. No additional conditions of release shall be imposed on Quimi-Arellano by Respondents**.  Respondents shall further facilitate Quimi-Arellano's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

5.    Respondents are ENJOINED from re-arresting or re-detaining Quimi-Arellano unless they demonstrate, by clear and convincing evidence at a pre-

7

deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified.  At any such bond hearing, Respondents shall bear the burden of proof, and Quimi-Arellano shall be allowed to have counsel present.  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.     Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Quimi-Arellano from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7.     Should Quimi-Arellano believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **July 30, 2026**.  Respondents shall file a response by no later than **August 20, 2026**, and Quimi-Arellano shall file a reply by no later than **September 3, 2026**; and

8.     Judgment shall enter in Quimi-Arellano's favor and against Respondents on **July 16, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 2nd day of July, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge